# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GINA M. WRIGHT, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )     Case No. CIV-13-200-F |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
|     Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Gina M. Wright brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for supplemental security income benefits ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. United States District Judge Stephen P. Friot has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record (Doc. No. 11, hereinafter "R.__"). The parties have briefed their positions, and the case is now ready for decision. For the reasons set forth below, it is recommended that the Commissioner's decision be REVERSED AND REMANDED.

### PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed her application for SSI on April 14, 2009, alleging a disability onset date of February 15, 2009, and seeking benefits on the basis of anxiety,

depression, panic attacks, back problems, and tumors on her spine. R. 185, 208, 215. Following initial administrative denials of Plaintiff's application, she requested a hearing before an Administrative Law Judge ("ALJ"). R. 118, 126, 129-30. A hearing was held on November 10, 2010, before ALJ Thomas E. Bennett. R. 23-62. After the matter was reassigned, a supplemental hearing was held before ALJ Larry D. Shepherd on May 24, 2011. R. 63-113. ALJ Shepherd issued an unfavorable decision on September 16, 2011. R. 13-21.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (summarizing steps); 20 C.F.R. § 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date. R. 15. At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine and anxiety related disorder. R. 15.

At step three, the ALJ determined that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Pt. 404, Subpart P, Appendix 1 (the "Listings"). R. 15-16. Specifically, the ALJ found that Plaintiff's anxiety and other mental impairments did not meet or equal Listing 12.06 (anxiety-related disorders). R. 15-16. The ALJ did not expressly consider any other Listings. R. 15-16.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of her impairments. R. 16-19. Upon review of Plaintiff's medical records and her

testimony, the ALJ found that Plaintiff had the RFC to perform light work with additional limitations. R. 16. The ALJ determined that Plaintiff:

> can lift and carry 20 pounds occasionally and 10 pounds frequently; . . . can sit for about six hours during an eight-hour workday and can stand and walk for about six hours during an eight-hour workday; . . . can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; . . . cannot climb ladders, ropes, or scaffolds; . . . can have no exposure to hazards, such as unprotected heights and heavy machinery[;] . . . can understand, remember, and carry out simple, routine, and repetitive tasks; and . . . can respond appropriately to supervisors, coworkers, and usual work situations [and] have occasional contact with the general public.

R. 16; *see also* 20 C.F.R. § 416.967(b) (defining "light work"). Based on this RFC assessment, the ALJ determined at step four that Plaintiff was unable to perform her past relevant work of home health care worker. R. 19.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of her age, education, work experience, and RFC—could perform. R. 20-21. Taking into consideration the testimony of a vocational expert, the ALJ concluded that Plaintiff could perform occupations such as bagger, housekeeper, and stamp pad finisher. R. 20; *see also* R. 103-12. Finding that these occupations offer jobs that exist in significant numbers in the national economy, the ALJ concluded that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant time period. R. 20-21.

After the ALJ's unfavorable decision, Plaintiff requested review by the Appeals Council and submitted additional evidence for its consideration. R. 6-9. Specifically, Plaintiff presented additional medical records from the Central Oklahoma Community Mental Health Center (R. 661-76) and a letter from psychiatrist Amar N. Bhandary, M.D.

3

(R. 678-79). The Appeals Council ordered that the new evidence be accepted as part of the record. R. 4. Stating that it had considered the new evidence and accompanying brief from Plaintiff's attorney, and determining that these materials did not provide a basis for changing the ALJ's decision, the Appeals Council denied review on January 4, 2013. R. 1-4. Thereafter, Plaintiff commenced this appeal.

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

On appeal, Plaintiff argues that Dr. Bhandary's opinion, as submitted to the Appeals Council, was not properly considered and therefore the matter should be remanded to require such consideration. Second, Plaintiff argues that the ALJ did not consider whether Plaintiff's back condition met or equaled Listing 1.04 (disorders of the spine). Third, Plaintiff argues that the ALJ did not properly evaluate Plaintiff's credibility with respect to her subjective complaints. Finally, Plaintiff argues that the ALJ improperly disregarded lay opinion evidence in the form of a roommate's witness statement. *See* Pl.'s Br. (Doc. No. 13) at 1-9; Pl.'s Reply Br. (Doc. No. 17) at 1-4. These claims of error are considered in turn.

A. *New Evidence Submitted to Appeals Council*

When the Appeals Council denies review but expressly accepts new evidence into the record, it is not required to discuss its analysis of that evidence. *See Martinez v. Astrue*, 389 F. App'x 866, 868-69 (10th Cir. 2010). This is true even of opinion evidence that an ALJ would have been required to discuss expressly, such as a treating physician or psychologist opinion. *See Robinson v. Astrue*, 397 F. App'x 430, 432 (10th Cir. 2010). On appeal, however, the reviewing court still must decide whether the disability determination is supported by substantial evidence in the record as a whole, specifically including the new evidence that the Appeals Council made part of the record. *Martinez*, 389 F. App'x at 869; *cf.* Kr*auser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011). As a consequence of these principles, the reviewing court may be called upon to analyze an ALJ's opinion on the basis of evidence not considered or discussed by the ALJ.

The resulting question for the reviewing court is "whether the qualifying new evidence upsets [the ALJ's disability determination]." *Martinez*, 389 F. App'x at 869. The undersigned has previously explained that if the evidence in the record relevant to that question is so one-sided as to permit a ready answer by a reviewing court, the court may proceed to conclusively determine whether benefits should or should not have been awarded. *See Hickey v. Colvin*, No. 12-1277-C, Report and Recommendation at 8-12 (W.D. Okla. Feb. 25, 2014) (analyzing cases), *adopted*, Order (W.D. Okla. Mar. 18, 2014). On the other hand, if that question turns on competing evidence that is more properly evaluated in the first instance by the finder of fact, the court may remand for further proceedings by the Commissioner. *Id.* Here, because the new evidence presented by Plaintiff may readily be found to not upset the ALJ's disability determination, remand for additional findings is not required.

Plaintiff focuses her argument for remand on an opinion letter from Dr. Amar Bhandary of the Oklahoma Institute of Psychiatric Medicine. *See* Pl.'s Br. at 3-4.[1] In that letter, Dr. Bhandary states, in total:

> Ms. Gina Wright is under my care for chronic and severe pain secondary to Degenerative Joint Disease multiple levels with intervertebral disk Herniation of lumbar spine along with right-sided Sciatica. Notwithstanding robust dosage of medications, the patient continues to endure significant levels of pain. This pain impairs her ability to attend to tasks, thereby impairing her everyday functions including occupational functioning.

---

[1] While Plaintiff also presents additional records from the Central Oklahoma Community Mental Health Center, these treatment notes reflect continued counseling and medication of a kind consistent with the prior treatment at that Center that is discussed by the ALJ. *Cf.* R. 660-76 *with* R. 521-71; R. 18. The later records do not upset the disability determination of the ALJ. *See Martinez*, 389 F. App'x at 869.

> The patient also suffers from chronic multiple and severe psychiatric disorders such as Major Depression, Panic Disorder with Agoraphobia and Generalized Anxiety Disorder. These symptoms impair her emotionally and incapacitate her ability to function normally. She has been admitted to psychiatric inpatient unit on more than one occasion in the past.
>
> The patient's condition is severe and progressive to the point that she is unable to return to the labor force. For such reasons, I strongly recommend that she be provided with all the resources available for people with permanent disability.

R. 678. The only other record relating to treatment of Plaintiff by Dr. Bhandary is a medication prescription dated the day before his letter. R. 679.

Again, the fact that the Appeals Council did not make express findings regarding Dr. Bhandary's opinion is not cause for remand. In such circumstances, "[w]e take the Appeals Council at its word 'when it declares that it has considered a matter,'" and "there is no error, even if the order denying review includes no further discussion." *Martinez*, 389 F. App'x 866, 868-69 (10th Cir. 2010) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)). Nor does the opinion itself, when evaluated in light of the entirety of the medical evidence of record, upset the ALJ's disability determination such as would prompt remand.

Plaintiff acknowledges that Dr. Bhandary is not a treating source within the meaning of SSA regulations. *See* 20 C.F.R. § 416.902; Pl.'s Reply Br. at 1. Indeed, the evidence indicates that Dr. Bhandary saw Plaintiff only one time before issuing his opinion. R. 678-79; *see also* Pl.'s Br. at 3 (referring to the opinion as an "initial assessment"); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (discussing the

7

weight given to treating physicians' opinions).[2] As a "nontreating source," Dr. Bhandary's opinion is entitled to consideration, but not the greater weight assumed in favor of a psychiatrist who had an ongoing treatment relationship with Plaintiff. *See* 20 C.F.R. §416.927(c)(2).

Further, Dr. Bhandary's opinion is entirely general and conclusory. For example, Dr. Bhandary states that Plaintiff's combined physical and mental condition "impairs her ability to attend to tasks," "impair[s] her everyday functions including occupational functioning," and "impair[s] her emotionally and incapacitate[s] her ability to function normally." *See* R. 678. These generic conclusions are not the same as findings of specific activities that Plaintiff cannot perform and, thus, are not entitled to any weight. *See Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008) (holding that a "medical opinion" within the meaning of SSA regulations is one that contains a physician's "judgment about the nature and severity of [the claimant's] limitations, or any information about what activities [the claimant] could still perform"). Moreover, Dr. Bhandary's opinion lacks any discussion or reference to medical testing or observations, a failing that would permit the opinion to be disregarded even if Dr. Bhandary were a treating physician. *See Castellano v. Sec'y of HHS*, 26 F.3d 1027, 1029 (10th Cir. 1994) ("A treating physician's opinion may be rejected if his conclusions are not supported by

---

[2] Neither the letter nor the prescription states that Dr. Bhandary examined Plaintiff or contains observations reflecting a personal examination (e.g., descriptions of Plaintiff's appearance or complaints). R. 678, 679. However, Plaintiff's counsel represents that Dr. Bhandary examined Plaintiff and, thus, for purposes of this Report and Recommendation, the undersigned assumes that is so. *See* Pl.'s Br. at 3-4; 20 C.F.R. § 416.927(c)(1) (discussing weight given to the opinion of an examining source).

8

specific findings."). Finally, Dr. Bhandary's statement that Plaintiff is "unable to return to the labor force" is—aside from being similarly conclusory—an intrusion upon "the ultimate issue for the ALJ to decide," and thus not entitled to any weight. *See Russell v. Astrue*, 506 F. App'x 792, 793 (10th Cir. 2012); *cf. Cowan*, 552 F.3d at 1189.

The ALJ's decision reflects a thorough evaluation of the medical evidence before him, resulting in findings of specific—and significant—limitations on Plaintiff's physical and mental functional abilities. R. 15-19. To the extent that Dr. Bhandary's opinion presents differing limitations, it is devoid of the specific findings and support that would entitle it to any weight. Therefore, the undersigned finds that the new evidence presented by Plaintiff does not upset the ALJ's disability determination and concludes that this claim of error should be rejected.

B. *Whether the ALJ Properly Considered Listing 1.04*

At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the [presumptively disabling impairments in the Listings]." R. 15. The ALJ expressly analyzed whether Plaintiff's condition met or equaled Listing 12.06 (anxiety-related disorders), but—notwithstanding his finding at step two that Plaintiff has a severe impairment of degenerative disc disease of the lumbar spine—did not specifically discuss Listing 1.04 (disorders of the spine) or analyze whether Plaintiff's back condition met or equaled the requirements of that Listing.

An error in failing to expressly analyze a relevant Listing does not necessarily require remand. In *Fischer-Ross v. Barnhart*, the Tenth Circuit considered a claim of

error similar to that asserted by Plaintiff. 431 F.3d 729, 733-35 (10th Cir. 2005). In that case, the plaintiff argued that the ALJ had erred by, among other things, not discussing Listing 1.04 at step three despite finding at step two that the plaintiff had a severe impairment of lumbar spondylitis. *Id.* at 731-32. The Tenth Circuit held that "any deficiency in the ALJ's articulation of his reasoning to support his step three determination is harmless" where "the ALJ's confirmed findings at steps four and five of his analysis, coupled with indisputable aspects of the medical record, conclusively preclude [the plaintiff's] qualification under the listings at step three." *Id.* at 735. Specifically as regards to Listing 1.04, the Tenth Circuit explained:

> The criteria for this listing require nerve root compression resulting in limited range of motion and motor loss with muscle weakness; arachnoiditis with severe burning or painful dysesthesia resulting in the need for postural changes more than once every two hours; or spinal stenosis resulting in the inability to ambulate effectively. . . . [T]he ALJ's RFC findings—particularly the finding [that the plaintiff] retains the primary postural capacities, i.e., sitting, standing, walking, for sedentary, light, and even medium work, as well as the ability to lift at the light RFC level and to stoop, crawl, crouch and kneel occasionally—conclusively negate the possibility of any finding that [the plaintiff] is presumptively disabled under the pertinent listing.

*Id.* (citations omitted).

Here, the ALJ determined that Plaintiff:

> can lift and carry 20 pounds occasionally and 10 pounds frequently; . . . can sit for about six hours during an eight-hour workday and can stand and walk for about six hour during an eight-hour workday; . . . can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; . . . cannot climb ladders, ropes, or scaffolds; . . . can have no exposure to hazards, such as unprotected heights and heavy machinery[;] . . . can understand, remember, and carry out simple, routine, and repetitive tasks; and . . . can respond appropriately to supervisors, coworkers, and usual work situations [and] have occasional contact with the general public.

R. 16. These findings—including that Plaintiff can sit for six hours during an eight-hour workday—clearly preclude qualification under Listing 1.04(B) (spinal arachnoiditis), which entails "the need for changes in position or posture more than once every 2 hours." *See* 20 C.F.R. Pt. 404, Subpt. P app. 1 § 1.04. Further, such findings—including that Plaintiff can walk, climb, balance, stoop, kneel, crouch, and crawl—clearly preclude qualification under Listing 1.04(C) (spinal stenosis), which entails the "inability to ambulate effectively." *See id.*

Moreover, the ALJ's findings and objective medical records conclusively preclude qualification under Listing 1.04(A). That provision requires:

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

*Id.*

The record includes reports of four MRIs of Plaintiff, on December 15, 2008 (lumbar spine), January 12, 2009 (lumbar spine), March 30, 2009 (right hip), and March 31, 2009 (sacrum and coccyx). *See* R. 279, 336, 334, 331. In his analysis of the first lumbar spine MRI, treating physician Theodore Boehm, M.D., observed "No nerve root impingement is noted." R. 431. In his analysis of the second lumbar spine MRI, Dr. Boehm noted "No changes in these findings when compared with her previous MRI." R. 427. For that matter, the MRIs of Plaintiff's right hip and sacrum/coccyx reflect no finding of nerve root impingement. R. 334, 331. Dr. Boehm also reported a negative

11

straight-leg raising test and strength of "5/5 in the lower extremities bilaterally." R. 431. A June 24, 2010 report of Robert Remondino, M.D., includes findings of annular disc bulges and a small foraminal disc protrusion in the lower back, and "a mild lumbar deformity . . . in the mid-lumbar segment," but notes no actual nerve root impingement. R. 583-85. Dr. Remondino found that Plaintiff should be released subject to "a permanent 25-pound weight limit," R. 585, which is consistent with the RFC assessment of the ALJ. *See* R. 16.[3] These medical records, and the ALJ's consequent findings regarding Plaintiff's physical and postural capacities, preclude qualification under Listing 1.04(A).

Having found that "the ALJ's confirmed findings at steps four and five of his analysis, coupled with indisputable aspects of the medical record, conclusively preclude [Plaintiff's] qualification under" all three subparagraphs of Listing 1.04, the undersigned concludes that any error of the ALJ in failing to expressly discuss Listing 1.04 is harmless. *See Fischer-Ross*, 431 F.3d at 735. This claim of error does not require remand.

 C. *Whether the ALJ Properly Analyzed Plaintiff's Credibility in Describing Her Subjective Symptoms and Properly Considered a Lay Witness Statement Describing Plaintiff's Symptoms*

Plaintiff challenges the ALJ's credibility findings as inadequate and conclusory,

---

[3] The record also includes the opinion of chiropractor Hugh G. McClure, D.C., that Plaintiff "will continue to experience pain, loss of normal range of motion, loss of strength, and loss of function of the lumbar spine in the future." *See* R. 573, 579. However, the ALJ specifically discussed this opinion in reaching his RFC assessment. R. 18 (noting that Dr. McClure is not an acceptable medical source within the meaning of 20 C.F.R. § 416.913(a) but his observations may be considered for purposes of evaluating the severity of Plaintiff's impairments).

asserting that the ALJ failed to identify which of Plaintiff's subjective complaints were accepted and which were disregarded, failed to link his findings to specific evidence, and relied too heavily on sporadic activities in evaluating Plaintiff's activities of daily living. *See* Pl.'s Br. at 5-8; Pl.'s Reply Br. at 2-3.  Further, Plaintiff argues that the ALJ erred by not discussing the description of Plaintiff's functional capacities and symptoms given by Plaintiff's roommate.  *See* Pl.'s Br. at 8-9; Pl.'s Reply Br. at 3-4.

The first argument implicates the framework for the proper analysis of a claimant's evidence of pain and other subjective symptoms first set forth in *Luna v. Bowen*, 834 F.2d 161, 163-66 (10th Cir. 1987), and recently summarized in *Keyes-Zachary v. Astrue*, 695 F.3d 1156 (10th Cir. 2012):

> A disability claimant's complaints of disabling pain are evaluated using the three-step analysis set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987).  Under *Luna* an ALJ faced with a claim of disabling pain is required to consider and determine (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.  *Id.* at 163–64.

*Keyes-Zachary*, 695 F.3d at 1166-67.  Here, the ALJ determined that Plaintiff "suffers from medically determinable impairments" and those impairments "could reasonably be expected to cause the pain, discomfort, and psychological limitations [that] the claimant alleges."  R. 19; *see also* R. 15 (finding severe impairments of degenerative disc disease of the lumbar spine and anxiety related disorder).  After listing reasons for his conclusion, the ALJ determined that he was "not persuaded that [claimant's] pain, discomfort, and

13

psychological limitations are at [the] disabling level of severity, duration, and intensity as the claimant alleges." R. 19.

Illustrative lists of factors for the ALJ to consider in assessing credibility are set forth in *Luna*, 834 F.2d at 165-66, and *Huston v. Bowen*, 838 F.2d 1125, 1132 & n.7 (10th Cir. 1988). Those factors include medication, attempts to seek treatment, daily activities, the consistency of the medical evidence and claimant's testimony, relationships and motivation of the witnesses, and other subjective factors within the ALJ's discretion. "But so long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, he need not make a formalistic factor-by-factor recitation of the evidence. Again, common sense, not technical perfection, is our guide." *Keyes-Zachary*, 695 F.3d at 1167 (citation and internal quotation marks omitted).

The ALJ listed the following specific reasons for not fully accepting Plaintiff's subjective complaints:

> an MRI and other diagnostic imaging shows only mild bulges and changes in the lumbar spine; the claimant has 5/5 strength in the lower extremities; straight leg raising is negative; she has no edema in the lower extremities; she has a normal gait; there is no indication of loss of grip; she had no cardiovascular or respiratory problems; Ernestine Shires, M.D., state agency physician concluded the claimant could perform light exertional work activity with limitations of climbing, stooping, and crouching; she has never been hospitalized for a mental impairment; she has a history of medication non compliance; Dr. Remondino released the claimant with a 25 pound weight limit restriction; and Dr. Kampschaefer concluded claimant could relate to others on a superficial basis and perform simple and complex tasks.

R. 19. The ALJ's discussion of Plaintiff's physical symptoms might be found to be sufficient under *Luna* and *Keyes-Zachary*, although it would be preferable if the ALJ had

cited specific symptoms testified to by Plaintiff and explained why the evidence did not support that particular testimony. *See* SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996); *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (holding that credibility findings "should be closely and affirmatively linked to substantial evidence" (internal quotation marks omitted)). However, the ALJ's discussion of Plaintiff's testimony regarding her mental symptoms does not meet the required standard.

The ALJ's statement that "Plaintiff has never been hospitalized for a mental impairment," R. 19, is not dispositive of, or particularly relevant to, the range of symptoms Plaintiff identified. *See* R. 83-84 (testimony of Plaintiff that she stays in bed all day for one week per month); R. 49-50, 85-86, 89 (episodes of nervousness and crying); R. 47-48, 94-96 (occasional episodes of panic, tension, and feeling pressure); *see also* R. 253-56, 403-15 (written statements by Plaintiff describing additional mental symptoms). In any event, the record shows that Plaintiff was voluntarily admitted to Red Rock Behavioral Health Services from November 6, 2009, to November 9, 2009. R. 604-06; *see also* R. 678 (Dr. Bhandary noting that Plaintiff "has been admitted to psychiatric inpatient unit on more than one occasion in the past"), 58 (Plaintiff's testimony at hearing before previous ALJ about being hospitalized for stress, depression, and anxiety). The state agency consultant's (Dr. Kampschaefer's) opinion of Plaintiff's mental symptoms is certainly relevant to an analysis of Plaintiff's testimony on that issue, but the ALJ must do more than reference that opinion. *See* R. 19, 456-73.

The ALJ's findings from elsewhere in his decision do not provide the missing analysis. At step three, the ALJ discussed the functional limitations caused by Plaintiff's

mental health impairments. R. 15-16. Regarding daily activities, the ALJ found that "[t]he claimant has no difficulty taking care of her personal grooming with some limitations; and she takes medications without reminders; she performs household chores. These behaviors indicate that the claimant has no more than mil[d] restrictions in the ability to carry out the activities of daily living." R. 15. Regarding the categories of social functioning and concentration, persistence, and pace, the ALJ found that Plaintiff has limitations but that her activities—namely, that she previously worked as a children's gymnastics instructor and attended four years of college—indicate that the limitations were no more than moderate and mild, respectively. R. 15-16. Given that Plaintiff's work as a gymnastics instructor was in 1997-98 and she last attended college in 2000, *see* R. 77, 74, the relevance of those facts to Plaintiff's current mental symptoms is limited.

The ALJ also erred in not considering the third-party witness statement of Plaintiff's roommate, Rick Jenkins, who described Plaintiff's mental symptoms in terms similar to Plaintiff's own testimony. *See* R. 219-33; *see also* 403-15. An ALJ is not required to make a written finding about each witness' credibility, but the written decision must reflect that the ALJ considered the testimony. *Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006) (citing *Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996)). Here, the ALJ did not mention Mr. Jenkins' testimony at all.

RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned

16

Magistrate Judge recommends that the decision of the Commissioner be REVERSED and REMANDED for further proceedings consistent with this opinion.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by August 22, 2014. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED on this 8th day of August, 2014.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE